IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES LIABILITY INSURANCE COMPANY | § § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO._____ |
| v. | § § | |
| COPPER MOBILE, INC. and ARVIN SARIN | § § § | |
| *Defendants.* | | |

## ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, United States Liability Insurance Company ("USLI"), pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., and Rule 57 of the Federal Rules of Civil Procedure, brings this Original Complaint for Declaratory Judgement against Defendants, Arvind Sarin ("Sarin") and Copper Mobile, Inc. ("Copper Mobile"), seeking a determination of the rights and obligations of the parties under a policy of insurance USLI issued to Copper Mobile and with respect to a lawsuit filed against Sarin and Copper Mobile in the State District Court of Dallas County, Texas (the "Underlying Lawsuit") by Mann Hamdan (the "Underlying Plaintiff").

## I. NATURE OF THE ACTION

1.    This is an action seeking declaratory relief pursuant to 28 U.S.C. § 2201, et seq. for the purpose of resolving an actual controversy between USLI and Copper Mobile and its Chief Executive Officer, Sarin, under a Technology Professional Liability Errors and Omissions Policy as it relates to the Underlying Lawsuit involving claims against Copper Mobile and Sarin for alleged violation of Texas Securities Act, fraud and fraudulent inducement, negligent misrepresentation, breach of contract, unjust enrichment, breach of fiduciary duty, and violation

of the Texas Business Organizations Code, as set forth in further detail below.  Specifically, USLI seeks declarations that it has no duty to defend and no duty to indemnify Defendants Copper Mobile and Sarin for claims made against them in the Underlying Lawsuit.

## II. PARTIES

2.    USLI is an insurance company organized under the laws of Pennsylvania with its principal place of business in Pennsylvania.

3.    Copper Mobile, Inc. is a corporation organized under Delaware law with its principle place of business at 4100 Spring Valley Road, Suite 720, Dallas, Texas 75244.  Service of process can be made on Copper Mobile by serving its registered agent, Arvind Sarin, at the following address: 4100 Spring Valley Road, Suite 720, Dallas, Texas 75244.

4.    Arvind Sarin is an individual residing in Dallas, Texas.  Service of process can be made on Sarin by serving him at his place of business at 4100 Spring Valley Road, Suite 720, Dallas, Texas 75244.

## III. JURISDICTION AND VENUE

5.    This is an action for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.

6.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because this action involves citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because this is a judicial district in which a substantial part of the alleged events or omissions giving rise to the claim and/or controversy occurred, as well as the district in which the Underlying Lawsuit is pending.

## IV. THE UNDERLYING LAWSUIT

8.      The Underlying Plaintiff's Original Petition in the Underlying Lawsuit is attached hereto as Exhibit A.

9.      Underlying Plaintiff, Hamdan, brought the Underlying Lawsuit against Sarin, Copper Mobile and Worklake, Inc. ("Worklake") on October 16, 2017, in the 192nd Judicial District Court of Dallas County, Texas, Cause No. DC-17-14263, seeking to recover actual, consequential and incidental damages; exemplary damages; restitution; a constructive trust over all funds, property and proceeds obtained as a result of Sarin and Copper Mobile's alleged breach of fiduciary duty; inspection of Worklake's books and records; attorney's fees; and prejudgment and post-judgment interest related to causes of action for alleged violations of the Texas Securities Act; alleged fraud and fraudulent inducement; alleged negligent misrepresentation; alleged breach of contract; alleged unjust enrichment; alleged breach of fiduciary duty; and alleged violation of the Texas Business Organizations Code.

10.     Underlying Plaintiff alleges in the Underlying Lawsuit that Copper Mobile is a software development company headquartered in Dallas, Texas and that Sarin was its Chief Executive Officer at relevant times.

11.     Underlying Plaintiff alleges that in the summer of 2016 Sarin acted on behalf of Copper Mobile to solicit Underlying Plaintiff to purchase stock in a proposed company to be formed by Copper Mobile; that Sarin represented Copper Mobile would form a new company to be named Worklake, Inc. under Delaware law and transfer to Worklake sole ownership of software-related intellectual property; that Sarin and Copper Mobile represented to Underlying Plaintiff that the intellectual property was worth far more than $1,000,000.00.

12.     Underlying Plaintiff alleges that in June of 2016 Underlying Plaintiff and Copper Mobile entered into a "Letter Agreement" regarding the terms by which underlying Plaintiff would purchase Worklake stock if certain conditions identified in the Letter Agreement were fulfilled; that Sarin signed the Letter Agreement on behalf of Copper Mobile as its CEO.   Underlying Plaintiff alleges that in the Letter Agreement Copper Mobile represented: (a) the money Underlying Plaintiff invested in Worklake would be used to launch and grow Worklake; and (b) Worklake would have five members of its board of directors of which Hamdan and Copper Mobile would each appoint two board members and those four board members would elect a fifth independent board member.

13.     The Underlying Lawsuit alleges that Sarin and Hamdan signed a contract entitled "Contribution Agreement" addressing the stock sale contemplated by the Letter Agreement and specifying terms governing the transaction; and that Sarin signed the Contribution Agreement once on behalf of Copper Mobile and once on behalf of Worklake.

14.     Underlying Plaintiff alleges that the Contribution Agreement stated Copper Mobile would receive Worklake stock in return for Copper Mobile transferring certain assets to Worklake at "closing;" that the assets to be transferred included software code and other intellectual property (collectively referred to as the "Intellectual Property") related to the "Worklake Software as a Service Platform" and contracts Copper Mobile claimed to be a party to with Copper Mobile's customers; and that the Intellectual Property was to be specifically identified in a Bill of Sale to be signed by Copper Mobile.   According to the Underlying Lawsuit, Copper Mobile represented in the Contribution Agreement: (a) that Copper Mobile fully owned all of the assets to be transferred to Worklake; (b) that Worklake would have good and marketable title to all of the assets, free and clear of all liens; and (c) that none of the Intellectual Property would, nor use or distribution of

such assets now or in the future would violate or infringe the intellectual property rights of any third party. The Contribution Agreement allegedly called for Underlying Plaintiff to contribute $1,000,000.00 in exchange for Worklake stock and other rights.

15.     The Underlying Lawsuit alleges that at the planned closing on or about August 22, 2016, Copper Mobile did not bring: (a) a Bill of Sale signed by Copper Mobile identifying the intellectual property Copper Mobile transferred to Worklake free and clear of any ownership claims; and (b) a list of customer contracts Copper Mobile transferred to Worklake. Copper Mobile allegedly breached a material contractual obligation by failing to transfer to Worklake the assets to be the foundation of Worklake's business.

16.     Underlying Plaintiff alleges that in reliance on Sarin's representations that Sarin would deliver the intellectual property documents and customer contracts, Underlying Plaintiff contributed $200,000.00 to Worklake and became a Worklake shareholder. Underlying Plaintiff allegedly was to contribute the remaining $800,000.00 after Copper Mobile delivered the intellectual property documents and customer contracts.

17.     Sarin and Copper Mobile allegedly took the $200,000.00 from Worklake for their own purposes and Worklake was soon broke and, in November 2016, Worklake's bookkeeper informed Hamdan that Worklake would not be able to fulfill its payroll obligations unless Underlying Plaintiff contributed additional funds to Worklake. Underlying Plaintiff then paid an additional $20,000.00 into Worklake.

18.     The Underlying Lawsuit contends that Copper Mobile and Sarin did not provide Underlying Plaintiff with the Bill of Sale identifying intellectual property or the list of customer contracts transferred from Copper Mobile to Worklake. Underlying Plaintiff also alleges that Copper Mobile never transferred the subject intellectual property or customer contracts to

Worklake breaching Copper Mobile's representations and warranties regarding the intellectual property.

19.     After Worklake received $200,000.000 from Underlying Plaintiff, Copper Mobile and Sarin allegedly began using the money for their own purposes including, but not limited to: Sarin causing money to be transferred from Worklake to Copper Mobile and Sarin; Sarin causing purported advances and loans to be made by Worklake to Copper Mobile and Sarin; Sarin causing Worklake to pay obligations of Copper Mobile; and Sarin causing Worklake to pay expenses unrelated to Worklake's business.

20.     After contributing $200,000.00 to Worklake, Underlying Plaintiff claims he learned that Worklake was not a Delaware corporation as previously represented to Underlying Plaintiff by Sarin and Copper Mobile.  Sarin also allegedly claimed to be the sole director of Worklake notwithstanding the Letter Agreement and a "Shareholders Agreement" representing that Worklake would have a five-person Board of Directors, two of which would be appointed by Underlying Plaintiff.

21.     The Underlying Lawsuit alleges that Underlying Plaintiff, Sarin and Copper Mobile entered into a Shareholders Agreement on August 22, 2016 to specify the management of Worklake, provide Underlying Plaintiff with certain rights relating to Worklake and its stock, and place restrictions on the ability to sell, assign, and issue Worklake stock.

22.     The Underlying Lawsuit alleges that Sarin and Copper Mobile repeatedly breached the Shareholder Agreement by, *inter alia*,: (a) Sarin acting as purported sole member of Worklake's Board of Directors; (b) loaning or advancing Worklake funds to Sarin and Copper Mobile; and (c) issuing new stock in Worklake to a purchaser in violation of Underlying Plaintiff's preemptive rights to purchase Worklake stock.

23.      In sum, the Underlying Lawsuit alleges that Copper Mobile and/or Sarin solicited Underlying Plaintiff to purchase stock in a corporation (Worklake) to be formed by Copper Mobile; that Copper Mobile and/or Sarin made misrepresentations to Underlying Plaintiff in connection with the stock purchase transaction; that Copper Mobile and/or Sarin breached a Letter Agreement, Contribution Agreement and a Shareholders Agreement related to the stock purchase transaction; and that Copper Mobile and/or Sarin misused funds that Underlying Plaintiff contributed to Worklake.

24.      USLI is currently providing Copper Mobile and Sarin defense, subject to a reservation of rights, in the Underlying Lawsuit.  In addition, Copper Mobile and Sarin are seeking indemnity from USLI under the USLI Technology Professional Liability Errors and Omissions Policy ("the Policy").  USLI requests a determination from the Court that the terms of the Policy do not require USLI to defend or indemnify Copper Mobile or Sarin the Underlying Lawsuit.

## V.  THE POLICY

25.      Technology Professional Liability Errors and Omissions Policy No. TK 1552269A issued by USLI to Copper Mobile for the policy period from March 1, 2017 to March 1, 2018 (the "Policy") is attached hereto as Exhibit B.

26.      The Policy contains an Insuring Agreement; Broad Form Endorsement Including Network Security, Privacy and Media Liability; Definitions; and Exclusions which affect coverage in this matter.

27.      The Policy Insuring Agreement provides:

A. The Company (USLI) will pay on behalf of the Insured any Loss excess of the Deductible not exceeding the Limit of Liability to which this coverage applies that the Insured shall become legally obligated to pay because of Claims first made against the Insured during the Policy Period, or if applicable, during any Extension Period, for Wrongful Acts of an Insured.

B.  The Company has the right and duty to defend any Claim to which this insurance applies, even if the allegations of the Claim are groundless, false or fraudulent.  The Company may investigate any Claim and settle any Claim with the Insured's consent as the Company deems expedient, but the Company is not obligated to pay any damages or defend any Claim after the Limit of Liability has been exhausted by payments of Loss.

28.  The Policy Definitions include the following terms and definitions:

B.  "Claim(s)" means a demand for money as compensation for a Wrongful Act including any judicial or administrative proceeding initiated against any Insured seeking to hold such Insured responsible for a Wrongful Act, including any appeal therefrom.

E.  "Computer Technology Services" means information technology services performed by an Insured for others for a fee, including but not limited to computer consulting, systems analysis, installation, programming, data processing, system integration, software development and design, disaster recovery, record retrieval, management and repair or maintenance of computer products, networks or systems and education and training services related to the above.

M.  "Professional Services" means services rendered for others for a fee solely in the conduct of Computer Technology Services and/or Internet Services.

29.  The Broad Form Endorsement Including Network Security, Privacy and Media Liability contains the following definitions:

N.  "Wrongful Act" means any Professional Wrongful Act, Network Security and Privacy Wrongful Act, or Media Wrongful Act.

ii.  Intellectual Property Injury means infringement of copyright, title, slogan, logo, trademark, domain name, dilution of trademark or service mark, trade name, or trade dress.

iii.  Media Wrongful Act means any actual or alleged error or omission or Intellectual Property Injury or Personal Injury committed by the Insured in the course of or arising out of the display, broadcast, publication, dissemination, distribution or release of material of any kind or nature whatsoever (including but not limited to words, pictures, sounds, images, graphics, code and data) that communicates information, regardless of the method or medium of communication of such material (including but not limited to print, broadcast, digital and electronic communication and software) or the purpose for which the communication is intended, including but not limited to Advertising by the Insured and/or the gathering,

creation, collection or recording of such material for inclusion in any display, broadcast, dissemination, distribution or release by the Insured.

iv. Network Security and Privacy Wrongful Act means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty committed by an Insured that results in; (1) unauthorized access to any computer system, or (2) use of the Named Insured's computer system in a denial of service attack against a third party's computer system; or (3) denial of authorized electronic access to any computer system; or (4) the transmission of malicious code: or (5) the misappropriation, theft, loss of, unauthorized access, inadvertent disclosure or public exposure of Personally Identifiable Information; or (6) the misappropriation, inadvertent disclosure or public disclosure of Third Party Corporate Information without the authorization or permission of the Named Insured or the owner of such information; (7) violation of Privacy Policy.

v. Personal Injury means: (1) wrongful entry or eviction or other invasion of private occupancy; or (2) libel or slander, defamation or disparagement of the goods, products, services, character or reputation of a third-party, plagiarism, piracy or misappropriation of ideas under implied contract; or (3) intentional infliction of emotional distress; or (4) disparagement or harm to the reputation or character of any person or organization; or (5) invasion, infringement or interference with a third-party' right of privacy or publicity including false light and public disclosure of private facts, commercial misappropriation of name, persona, voice or likeness; or (6) false arrest, detention or imprisonment or malicious prosecution.

viii. Professional Wrongful Act means any actual or alleged error, omission, negligent act, Intellectual Property Injury, Personal Injury, or unintentional breach of a written contract resulting from the rendering or failure to render Professional Services by an Insured.

30.    The Policy also contains Exclusions that affect coverage for the Underlying Lawsuit. The Policy does not apply to, and the Company will not defend or pay Loss for, any Claim arising out of, directly or indirectly resulting from, based upon or in any way involving any actual or alleged:

A. criminal, fraudulent, dishonest or discriminatory act or omission or any act, error or omission committed with knowledge of its wrongful nature or with intent to cause damage, or the gaining by the Insured of any personal profit, gain or advantage to which the Insured was not legally entitled;

. . .

D.  non-monetary relief;

. . .

G.  violation of any securities, anti-trust, restraint of trade, unfair trade practices, consumer protection, or other similar law by any person, including but not limited to any Insured;

H.  express warranties or guarantees by any Insured, or the Insured assuming liability under contract unless the Insured would have been legally liable in the absence of such contract;

. . .

R.  rendering or failure to render investment or insurance counseling or advice; purchase or selling or failure to purchase or sell an investment or insurance of any kind; or the Insured's advice, promises or guarantees as to the future value of any investments or interest rate or rate of return.

31.     The Policy also contains a Retroactive Date Endorsement which provides in part:

> Coverage shall also not apply to any Claim based upon or arising out of any Wrongful Act, or circumstance likely to give rise to a Claim of which any Insured had knowledge, or otherwise had basis to reasonably anticipate might result in a Claim, or possible Claim or circumstance referenced in the Application.

## VI. COUNT ONE

### FIRST CAUSE OF ACTION
### (Declaratory Judgment as to Duty to Defend and Duty to Indemnify)

32.     Plaintiffs incorporate by reference all allegations in the preceding paragraphs as if fully set forth verbatim.

33.     A justiciable controversy has arisen between USLI and Copper Mobile and Sarin regarding the parties' rights and obligations under the Technology Professional Liability Errors and Omissions policy issued by USLI to Copper Mobile for the policy period from March 1, 2017 to March 1, 2018. The justiciable controversy is within the jurisdiction of this Court and can be resolved by a declaratory judgment of this Court.

34.     The Underlying Lawsuit alleges that in the summer and fall of 2016 Sarin and Copper Mobile solicited the Underlying Plaintiff to purchase stock in a company to be formed by Copper Mobile; Sarin and Copper Mobile made misrepresentations to Hamdan in connection with the stock purchase transaction; Sarin and Copper Mobile breached a Letter Agreement, a Contribution Agreement and a Shareholder Agreement in connection with the Underlying Plaintiff's purchase of stock in Worklake; and Sarin and Copper Mobile misused funds that the Underlying Plaintiff contributed to Worklake.

35.     The Policy provides insurance against certain Claims made against the Insured during the Policy Period for Wrongful Acts of an Insured.  As set forth above, the Policy defines a "Wrongful Act" as any Professional Wrongful Act, Network Security and Privacy Wrongful Act, or Media Wrongful Act.  Thus, the Policy provides no coverage unless one of the three categories of Wrongful Acts has been alleged.  In this case, none of the three Wrongful Acts are alleged by the allegations of the Underlying Lawsuit.

## No Professional Wrongful Act

36.     Professional Wrongful Act means an actual or alleged error, omission, negligent act, Intellectual Property Injury, Personal Injury, or unintentional breach of a written contract resulting from the rendering or failure to render Professional Services by an Insured.  "Professional Services," in turn, is defined as services rendered for others for a fee solely in the conduct of Computer Technology Services and/or Internet Services.  The Underlying Lawsuit does not allege a Claim against Copper Mobile or Sarin resulting from any Computer Technology Services or Internet Services rendered by them to Hamdan for a fee.

**No Network Security and Privacy Wrongful Act**

37.     Network Security and Privacy Wrongful Act means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty committed by an Insured that results in; (1) unauthorized access to any computer system, or (2) use of the Named Insured's computer system in a denial of service attack against a third party's computer system; or (3) denial of authorized electronic access to any computer system; or (4) the transmission of malicious code; or (5) the misappropriation, theft, loss of, unauthorized access, inadvertent disclosure or public exposure of Personally Identifiable Information; or (6) the misappropriation, inadvertent disclosure or public disclosure of Third Party Corporate Information without the authorization or permission of the Named Insured or the owner of such information; (7) violation of Privacy Policy. The Underlying Lawsuit does not allege that conduct of Copper Mobile or Sarin resulted in any of these enumerated results.  Consequently, the Underlying Lawsuit does not allege a Claim against Copper Mobile or Sarin resulting from a Network Security and Privacy Wrongful Act.

**No Media Wrongful Act**

38.     Media Wrongful Act means any actual or alleged error or omission or Intellectual Property Injury or Personal Injury committed by the Insured in the course of or arising out of the display, broadcast, publication, dissemination, distribution or release of material of any kind or nature whatsoever (including but not limited to words, pictures, sounds, images, graphics, code and data) that communicates information, regardless of the method or medium of communication of such material (including but not limited to print, broadcast, digital and electronic communication and software) or the purpose for which the communication is intended, including but not limited to Advertising by the Insured and/or the gathering, creation, collection or recording of such material for inclusion in any display, broadcast, dissemination, distribution or release by

the Insured. The Underlying Lawsuit does not allege conduct of Copper Mobile or Sarin in the course of or arising out of the display, broadcast, publication, dissemination, distribution or release of material. Consequently, the Underlying Lawsuit does not allege a Media Wrongful Act.

39. In addition, the Policy contains exclusions precluding coverage.

### Exclusion A

40.      Under Exclusion A, the Policy does not apply to, and the Company will not defend or pay Loss for, any Claim arising out of, directly or indirectly resulting from, based upon or in any way involving any actual or alleged criminal, fraudulent, dishonest or discriminatory act or omission or any act, error or omission committed with knowledge of its wrongful nature or with intent to cause damage, or the gaining by the Insured of any personal profit, gain or advantage to which the Insured was not legally entitled. The Underlying Lawsuit alleges that Sarin and Copper Mobile violated the Texas Securities Act by offering and selling securities by means of untrue statements of material fact or omitting to state material facts necessary to make the statements made not misleading, with the intent to deceive or defraud or with reckless disregard for the truth; committed fraud and fraudulent inducement by making material misrepresentations that were false with the intent that Hamdan act upon the misrepresentations, with knowledge that their representations were false; and obtained unjust enrichment from Hamdan by fraud, duress or taking of unfair advantage. Consequently, coverage for the Underlying Lawsuit is excluded by Exclusion A.

### Exclusion D

41.      Under Exclusion D, the Policy does not apply to, and the Company will not defend or pay Loss for, any Claim arising out of, directly or indirectly resulting from, based upon or in any way involving any actual or alleged non-monetary relief. The Underlying Lawsuit seeks

rescission of the stock purchase transactions; a constructive trust over funds, property and proceeds obtained by Copper Mobile as a result of alleged breach of fiduciary duties; an injunction mandating that Sarin permit Underlying Plaintiff to inspect Worklake's books and records; and an award of cost and expense, including attorney's fees, that Underlying Plaintiff incurs to enforce his alleged right to inspect Worklake's books and records. The Underlying Lawsuit's requests for non-monetary relief are excluded from coverage by Exclusion D.

### Exclusion G

42.     Under Exclusion G, the Policy does not apply to, and the Company will not defend or pay Loss for, any Claim arising out of, directly or indirectly resulting from, based upon or in any way involving any actual or alleged violation of any securities, anti-trust, restraint of trade, unfair trade practices, consumer protection, or other similar law by any person, including but not limited to any Insured. The Underlying Lawsuit alleges that Sarin and Copper Mobile violated the Texas Securities Act. Consequently, coverage for the Underlying Lawsuit is excluded by Exclusion G.

### Exclusion H

43.     Under Exclusion H, the Policy does not apply to, and the Company will not defend or pay Loss for, any Claim arising out of, directly or indirectly resulting from, based upon or in any way involving any actual or alleged express warranties or guarantees by any Insured, or the Insured assuming liability under contract unless the Insured would have been legally liable in the absence of such contract. The Underlying Lawsuit alleges that Copper Mobile breached its representations and warranties related to the intellectual property that was to be transferred to Worklake and identified in a Bill of Sale signed by Copper Mobile. Consequently, coverage for the Underlying Lawsuit is excluded by Exclusion H.

**Exclusion R**

44.     Under Exclusion R, the Policy does not apply to, and the Company will not defend or pay Loss for, any Claim arising out of, directly or indirectly resulting from, based upon or in any way involving any actual or alleged rendering or failure to render investment or insurance counseling or advice; purchase or selling or failure to purchase or sell an investment or insurance of any kind; or the Insured's advice, promises or guarantees as to the future value of any investments or interest rate or rate of return.  The Underlying Lawsuit alleges that Sarin and Copper Mobile made representations to the Underlying Plaintiff about the value of the assets Worklake would have when they convinced him to invest in Worklake and that Underlying Plaintiff relied upon statements and representations they made when he agreed to become a shareholder in Worklake.  Consequently, coverage for the Underlying Lawsuit is excluded by Exclusion R.

**Retroactive Date Endorsement**

45.     In addition, the Policy contains a Retroactive Date Endorsement that provides in relevant part:

> Coverage shall also not apply to any Claim based upon or arising out of any Wrongful Act, or circumstance likely to give rise to a Claim of which any Insured had knowledge, or otherwise had basis to reasonably anticipate might result in a Claim or possible Claim, or circumstance referenced in the Application.

The allegations of the Underlying Lawsuit reflect a substantial course of interaction between the Underlying Plaintiff and Sarin and/or Copper Mobile forming circumstances under which Sarin and/or Copper Mobile either: 1) had knowledge of circumstances likely to give rise to a Claim; or 2) had a basis to reasonably anticipate might result in a Claim or possible Claim.  Consequently, coverage for the Underlying Lawsuit is excluded by the Retroactive Date Endorsement.

**<u>Declaratory Relief</u>**

46.     In addition to the foregoing Policy terms, definitions and exclusions, USLI pleads all other terms, conditions, limits, definitions, exclusions and/or provisions of the Policy which may be applicable to a determination of the rights and obligations of the parties under the Policy.

47.     Based on the foregoing, USLI seeks a declaration that it has no duty to defend or indemnify Copper Mobile and/or Sarin in the Underlying Lawsuit.

## VII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff United States Liability Insurance Company respectfully prays for judgment on its behalf declaring that United States Liability Insurance Company has no duty to defend Copper Mobile, Inc. and/or Arvin Sarin in the Underlying Lawsuit and that United States Liability Insurance Company has no duty to indemnify Copper Mobile, Inc. and/or Arvin Sarin in the Underlying Lawsuit, and that United States Liability Insurance Company be granted all such other and further relief to which it is justly entitled.

Respectfully submitted,

**BROWN SIMS, P.C.**

By: */s/ Mark C. Clemer*
Mark C. Clemer
Attorney-In-Charge
Texas Bar No. 04372300
Federal ID. No. 7662
1177 West Loop South, Tenth Floor
Houston, Texas  77027-9007
Telephone: (713) 629-1580
Facsimile: (713) 629-5027
*mclemer@brownsims.com*

**COUNSEL FOR UNITED STATES
LIABILITY INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the foregoing pleading has been sent to all counsel of record on this the 14th day of January, 2019.

/s/ *Mark C. Clemer*
Mark C. Clemer